# United States District Court, Northern District of Illinois

JH

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | Darrah |
|---|---|---|---|
| **CASE NUMBER** | 12 C 3476 | **DATE** | 5/10/12 |
| **CASE TITLE** | Willie Buckhana (A92929) vs. Dr. Ghosh, et al. | | |

**DOCKET ENTRY TEXT**

The plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 3), is granted. The Court orders the trust fund officer at the plaintiff's place of incarceration to make monthly deductions in accordance with this order. The clerk shall send a copy of this order to the trust fund officer at the Stateville Correctional Center. The complaint (Dkt. No. 1), is dismissed on initial review pursuant to 28 U.S.C. § 1915A. Plaintiff's motion for appointment of counsel (Dkt. No. 4), and any other pending motions are moot. The clerk is requested to enter a Rule 58 Judgment in favor of defendants against plaintiff. Civil Case Terminated.

■[ For further details see text below.]          Docketing to mail notices.

## STATEMENT

Pro se plaintiff Willie Buckhana, a prisoner at the Stateville Correctional Center, has brought suit pursuant to 42 U.S.C. § 1983. Pending before the Court are plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 3), complaint for an initial review pursuant to 28 U.S.C. § 1915A, (Dkt. No. 1), and motion for appointment of counsel. (Dkt. No. 5).

The plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 3), is granted. Pursuant to 28 U.S.C. § 1915(b)(1), the plaintiff is assessed an initial partial filing fee of $12.65. The trust fund officer at the plaintiff's place of incarceration is authorized and ordered to collect the partial filing fee from the plaintiff's trust fund account and pay it directly to the Clerk of Court. After payment of the initial partial filing fee, the plaintiff's trust fund officer is directed to collect monthly payments from the plaintiff's trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments shall be forwarded to the Clerk of Court each time the amount in the account exceeds $10 until the full $350 filing fee is paid. All payments shall be sent to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and shall clearly identify the plaintiff's name and this case number. This payment obligation will follow the plaintiff wherever he may be transferred.

Turning to the initial review of plaintiff's complaint, (Dkt. No. 1), the Court is required to dismiss a suit brought *in forma pauperis* if it determines that the complaint is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. The following facts, drawn from plaintiff's complaint (Dkt. No. 1), are accepted as true and all reasonable inferences are made in the light most favorable to the plaintiff. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010) (citing *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001)). This Court also "construe[s] pro se complaints liberally and hold[s] them to a less stringent standard than

formal pleadings drafted by lawyers." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Erickson v. Pardus*, 551 U.S 89, 94 (2007) (per curiam); *Obriecht v. Raemisch*, 417 F.3d 489, 492 n.2 (7th Cir. 2008)).

"To satisfy the notice-pleading standard, a complaint must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' which is sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Bridges*, 557 F.3d at 545 (quoting *Erickson*, 551 U.S at 89). "'[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Bridges*, 557 F.3d at 546 (internal quotation marks and citations omitted) (emphasis in original).

In October 2009, plaintiff injured himself while lifting weights at the Stateville gym. He dropped a weight on his left hand and heard a pop. The next day, plaintiff was seen at the prison health care unit where he was examined by physician's assistant defendant LaTanya Williams. Defendant Williams examined plaintiff hand and saw swelling, deformity, and discoloration. Williams provided a cool compress and Tylenol to plaintiff and ordered an x-ray. Plaintiff received the x-ray of his hand a week later. The complaint does not detail any results from the x-ray.

Plaintiff continued to experience pain and swelling from the injury over the next several months. He requested additional treatment and was again examined by Williams who provided him an elastic wrap. The wrap was unhelpful.

In March 2010, plaintiff was seen by an onsite physician at Statevile, Dr. Zhang. (Dr. Zhang is not named as a defendant). Dr. Zhang consulted with defendant Dr. Ghosh. Dr. Ghosh was the medical director at the Stateville health facility. In April 2010, Dr. Ghosh examined plaintiff's hand and ordered an MRI.

The MRI was taken at the University of Illinois (UIC) Hospital in Chicago in June 2010. The MRI results showed that plaintiff had a broken Scaphoid bone and associated ligament tear. The Scaphoid bone is a very small bone (approximately the size and shape of a medium sized cashew), in a person's wrist. *Scaphoid bone*, Wikipedia, *available at* http://en.wikipedia.org/wiki/Scaphoid_bone (last visited May 8, 2012).

Plaintiff had follow up visits with orthopaedic specialists at UIC over the next several months. On January 14, 2011, plaintiff received reconstructive surgery to repair the injury. Plaintiff received a variety of post operative care and therapy including a second surgery in May 2011 to remove the hardware attached during the first surgery.

Plaintiff brings the present suit against Williams, Dr. Ghosh and their employer, Wexford Health Sources, Inc. He claims that it took more than a year to address his injuries. Plaintiff believes that this is an improper delay due to budget restrictions imposed by Wexford. He also believes that Wexford employees ignored medical directions from outside medical staff for budgetary reasons.

To make out a claim for deliberate indifference, a prisoner must allege that defendants were intentionally indifferent to an objectively serious medical need or condition. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Guzman v. Sheahan*, 495 F.3d 852,

857 (7th Cir. 2007); *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). There is no question that plaintiff's injury qualifies as an objectively serious condition. However, he cannot plausibly allege that defendants were deliberate indifferent to that condition.

To demonstrate deliberate indifference, plaintiff must show intentional misconduct approaching criminal misconduct by defendants — negligence or malpractice is not sufficient. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Lee*, 533 F.3d 505. In evaluating whether a medical professional's actions constitute deliberate indifference, the "'medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). "'Deliberate indifference may be inferred based upon a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.'" *Gayton v. McCoy*, 593 F.3d 610, 622-23 (7th Cir. 2010) (quoting *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996)). "'Deliberate indifference is not medical malpractice. . . .'" *Roe*, 631 F.3d at 857 (quoting *Duckworth*, 532 F.3d at 679).

Furthermore, delay in treatment can demonstrate deliberate indifference, but it must be *unnecessary* delay. *Smith v. Knox County Jail*, 666 F.3d 1037, 1039-40 (7th Cir. 2012) (per curiam). "Anyone who has ever visited a doctor's office knows that some delays in treatment are inevitable, particularly absent a life-threatening emergency. Such delays are even more likely in [a correctional] environment." *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010). The reasonableness of the delay is measured by considering the severity in the condition and its pain against the ease in treatment. *Smith*, 666 F.3d at 1040.

The Court appreciates that plaintiff suffered from a broken bone in his hand causing him pain. However, the facts alleged in the complaint fail to state a deliberate indifference claim. He was seen the day after his injury by defendants Williams who ordered an x-ray. The x-ray apparently did not show the injury, but plaintiff received medication for his pain, a wrap and other follow up. This did not suffice, and so he eventually received an MRI which identified the broken bone and torn tendon. He was seen on several occasions by an orthopedic specialist, and eventually received two surgeries to address his condition at university hospital.

Plaintiff's view is that he should have received this treatment faster and the delay is due to cost saving attempts by Wexford. He also suggests that once he returned from his surgery, his course of treatment at Stateville was different than that recommended by his surgeons.

The attention to plaintiffs needs and course of treatment plaintiff received is far better than the intentional misconduct required to establish a deliberate indifference claim. His injury was immediately treated, he received an x-ray in a short period of time, and he received multiple follow ups by several specialists in response to his continued complaints resulting in surgeries. A private person living outside of prison with private health insurance, such as an HMO, often does not receive this level of care such as seeing orthopedic specialists. Furthermore, waiting to see specialists or a delay to have a non emergency surgery, is a routine part of receiving medical care.

# STATEMENT

The Court is also at a loss to understand plaintiff's claim that care was denied or delayed due to Wexford's alleged cost savings strategies. Plaintiff received extensive care including two surgeries, care from orthopedic specialists, and an MRI at a university hospital. This is in addition to the initial care he received onsite at Stateville. These allegations fail to plausibly suggest that any cost cutting efforts were so extreme as to deny plaintiff the constitutionally required level of care. The care provided to plaintiff as alleged in the complaint is more than sufficient to meet the minimum guarantees of the Constitution.

Plaintiff's complaint is dismissed because it fails to state a claim upon which relief may be granted. Based on the events alleged in the complaint, it is clear that plaintiff cannot set forth a valid claim. Granting plaintiff leave to amend his complaint would be futile, and so the case is dismissed. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (citations omitted); *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). Plaintiff complaint must be dismissed and a strike assessed under 28 U.S.C. § 1915(g).

Plaintiff is warned that if a prisoner accumulates a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, (i.e, "strikes"), that prisoner may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). A prisoner with three strikes under § 1915(g) is also required to alert a federal court of this fact when filing a new suit in that Court. *See Ammons v. Gerlinger*, 547 F.3d 724, 725 (7th Cir. 2008) (citing *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999)). Failure to inform any new Court of the prior three strikes will result in an automatic dismissal of the new case while still requiring payment of the filing fee, and barring any future litigation (other than criminal cases and petitions challenging the terms of confinement) until the filing fee is paid in full. *Sloan*, 181 F.3d at 859.

If plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues plaintiff plans to present on appeal, *see* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).